1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| JESSE MALLINGER, on Behalf of Himself and All Others Similarly Situated, | ) ) ) | Case No. 2:16-cv-1316 |
| Plaintiff, | ) ) ) | CLASS ACTION COMPLAINT |
| v. | ) ) | |
| OUTERWALL, INC., ERIK E. PRUSCH, NELSON C. CHAN, DAVID M. ESKENAZY, ROBERT D. SZNEWAJS, NORA M. DENZEL, ROSS G. LANDSBAUM, and JEFFREY J. BROWN, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

Plaintiff Jesse Mallinger ("Plaintiff"), on behalf of himself and all others similarly situated, by and through his undersigned counsel, alleges the following upon information and belief, including the investigation of counsel and review of publicly available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge.

**NATURE OF THE ACTION**

1.      This is a stockholder class action brought by Plaintiff on behalf of the public stockholders of Outerwall, Inc. ("Outerwall" or the "Company") against the Company and its Board of Directors (the "Board" or the "Individual Defendants").  This action seeks to enjoin the

CLASS ACTION COMPLAINT

BRESKIN ׀ JOHNSON ׀ TOWNSEND<sup>PLLC</sup>
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

1   Individual Defendants from further breaching their fiduciary duties and violating federal law in

2   their pursuit of a sale of the Company at an unfair price through an unfair process.

3          2.      Outerwall's stockholders are the latest victims to the short-term pressure on

4   boards of directors created by activist investors.  These activist investors look for companies

5   engaged in a turnaround, buy a significant portion of stock, and then push for the board to sell

6   the company, rather than complete their turnaround efforts.  Engaged Capital LLC ("Engaged

7   Capital") followed that game plan exactly with its investment in Outerwall.  Rather than standing

8   up to Engaged Capital and its short-term goals, the Outerwall Board caved almost immediately,

9   entering into a "cooperation agreement" with Engaged Capital.  Pursuant to this cooperation

10  agreement, Engaged Capital named three directors to the Board and the Board agreed to explore

11  "strategic alternatives"—code words for a sale of the Company.

12         3.      At the time the Board entered into this agreement in April 2016, the Company's

13  stock price was in the midst of a temporary slump.  Outerwall's stock price was around $40 per

14  share, 33% less than it was just five months earlier.  The investing public was concerned about

15  the continued viability of the Company's Redbox segment after posting less than stellar results,

16  the ability of ecoATM segment to turn a profit, and the relatively recent appointment of a new

17  Chief Executive Officer ("CEO"), defendant Erik E. Prusch ("Prusch").

18         4.      Engaged Capital focused on ecoATM to argue that the Company should deploy

19  no additional capital to its growth investments, specifically ecoATM, and that Outerwall should

20  sell or shut down the ecoATM business altogether.  In addition, Engaged Capital demanded that

21  the Company increase its dividend, which Engaged Capital claimed "would result in significant

22  appreciation to [Outerwall's] share price in a short period of time."

23         5.      Engaged Capital's demands were directly from the short-term investors' playbook.

24  It was demanding the Board cease investment into the long-term future of the Company and

25  instead take steps to provide a short-term boost to the Outerwall's stock price.  While such moves

26  benefited  Engaged  Capital,  which  bought  its  Outerwall  stock  at  an  average  price  of

27

28  CLASS ACTION COMPLAINT

1    approximately $31.09 per share, they did not make sense for long-term investors that saw a cash

2    rich company with a significant tactical advantage over its competitors.

3            6.      Rather than stick up for the Company's ordinary stockholders, the Board caved to

4    Engaged Capital.  It doubled Outerwall's dividend and engaged in in a sale process, eventually

5    agreeing to sell to Apollo Global Management, LLC ("Apollo") for $52 per share (the "Proposed

6    Acquisition").  Notably, according to reports, the Board had previously rebuffed offers to buy the

7    Company at $90 per share.  As soon as the Proposed Acquisition was entered into, Engaged

8    Capital began cutting its stake in the Company, reducing its ownership by over 50%.

9            7.      The Proposed Acquisition, however, fails to reflect Outerwall's true value.  Using

10   a common valuation multiple, such as the one produced when dividing Outerwall's peers'

11   enterprise value ("EV") by their earnings before interest, taxes, depreciation, and amortization

12   ("EBITDA") to the previous twelve months, demonstrates that the Company could be worth

13   $272 per share, more than five times the take-out price in the Proposed Acquisition.

14           8.      The Company's recent results also demonstrate that the Proposed Acquisition

15   undervalues Outerwall, and that Engaged Capital was wrong to demand Outerwall stop investing

16   in ecoATM.  On July 28, 2016, the Company announced its second quarter earnings.  Outerwall

17   saw its profits increase to $40.5 million, compared to a loss of over $45 million during the same

18   period the previous year.  In addition, revenue from ecoATM rose to $44.8 million, nearly

19   doubling from the $26.1 million in revenue ecoATM brought in the year before.

20           9.      In an attempt to secure stockholder support for the Proposed Acquisition, on May

21   13, 2016, defendants filed a Recommendation Statement on Schedule 14D-9 (the

22   "Recommendation Statement") with the U.S. Securities and Exchange Commission (the "SEC").

23   The Recommendation Statement, which recommends that Outerwall stockholders tender their

24   stock to Apollo, omits and/or misrepresents material information concerning: (i) the process

25   leading up to the Proposed Acquisition; (ii) the financial analyses prepared by its financial

26   advisor, Morgan Stanley & Co. LLC ("Morgan Stanley"); and (iii) the Company's financial

27   projections.

28   CLASS ACTION COMPLAINT

10.     In short, the Proposed Acquisition is designed to unlawfully divest Outerwall's public stockholders of the Company's valuable assets for grossly inadequate consideration and without fully disclosing all material information concerning the transaction to stockholders.  To remedy defendants' breaches of fiduciary duty and violations of the Securities Exchange Act of 1934 (the "Exchange Act"), Plaintiff seeks injunctive relief preventing consummation of the Proposed Acquisition, unless and until the Company adequately discloses all material information concerning the transaction.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over the claims asserted herein for violations of sections 14(a) and 20(a) of the Exchange Act.  This Court has supplemental jurisdiction under 28 U.S.C. §1367.

12.     This Court has jurisdiction over each defendant because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

13.     Venue is proper in this District pursuant to 28 U.S.C. §1391 because Outerwall's principal executive offices are located at 1800—114th Avenue SE, Bellevue, Washington.

## THE PARTIES

**Plaintiff**

14.     Plaintiff was a stockholder of Outerwall at the time of the wrongdoing complained of, has continuously been a stockholder since that time, and is a current Outerwall stockholder.

**Defendants**

15.     Defendant Outerwall is a Delaware corporation with principal executive offices located at 1800—114th Avenue SE, Bellevue, Washington.   Outerwall is a provider of automated retail solutions which offer products and services that benefit consumers and drive retail traffic and revenue for retailers.  Outerwall's core automated retail offerings are its Redbox

segment, which allows consumers to rent or purchase movies and video games from self-service kiosks; its Coinstar segment, which allows consumers to convert their coins into cash and convert coins and cash to stored value products at self-service kiosks; and its ecoATM segment, which allows consumers to sell certain electronic devices for cash at self-service kiosks and purchase and sell electronic devices for cash online under its Gazelle™ brand.  As of December 31, 2015, Outerwall employed approximately 2,670 people worldwide.  Upon completion of the Proposed Acquisition, Outerwall will become a wholly owned subsidiary of Aspen Parent, Inc. ("Parent").

16.     Defendant Prusch is Outerwall's CEO and a director and has been since July 2015.   Defendant Prusch is also Interim President of Redbox Automated Retail, LLC, Outerwall's wholly-owned subsidiary, and has been since December 2015.

17.     Defendant Nelson C. Chan is Outerwall's Chairman of the Board and has been since June 2013, and a director and has been since July 2011.

18.     Defendant David M. Eskenazy is an Outerwall director and has been since August 2000.

19.     Defendant Robert D. Sznewajs is an Outerwall director and has been since August 2002.

20.     Defendant Nora M. Denzel ("Denzel") is an Outerwall director and has been since January 2013.  Defendant Denzel was also Interim CEO of Outerwall from January 2015 to July 2015.

21.     Defendant Ross G. Landsbaum is an Outerwall director and has been since July 2014.

22.     Defendant Jeffrey J. Brown is an Outerwall director and has been since April 2016.

**Non-Defendant Interested Parties**

23.     Apollo is a Delaware corporation with principal executive offices located at 9 West 57th Street, 43rd Floor, New York, New York.  Apollo is a global alternative investment

CLASS ACTION COMPLAINT

1  manager in private equity, credit, and real estate.  As of December 31, 2015, Apollo had a total

2  assets under management of $170 billion, including approximately $38 billion in private equity,

3  $121 billion in credit, and $11 billion in real estate.

4      24.    Parent is a Delaware corporation and an affiliate of Apollo.  Upon completion of

5  the Proposed Acquisition, Outerwall will become a wholly owned subsidiary of Parent.

6      25.    Aspen Merger Sub, Inc. ("Outerwall Merger Sub") is a Delaware corporation and

7  wholly owned subsidiary of Parent.  Upon completion of the Proposed Acquisition, Outerwall

8  Merger Sub will merge with and into Outerwall (the "Outerwall Merger") and cease its separate

9  corporate existence.

10     26.    Redwood Merger Sub, Inc. ("Redbox Merger Sub") is a Delaware corporation and

11  wholly owned subsidiary of Parent.  Upon completion of the Proposed Acquisition, Redbox

12  Merger Sub will merge with and into Redbox (the "Redbox Merger") and cease its separate

13  corporate existence.

14     27.    Redbox Automated Retail, LLC is a Delaware limited liability company and a

15  wholly owned subsidiary of Outerwall.  Upon completion of the Proposed Acquisition, Redbox

16  will continue as a wholly owned subsidiary of Outerwall.

17  **INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES**

18     28.    By reason of the Individual Defendants' positions with the Company as officers

19  and/or directors, said individuals are in a fiduciary relationship with Plaintiff and the other

20  stockholders of Outerwall and owe Plaintiff and the other members of the Class (as defined

21  herein) the duties of good faith, care, and loyalty.

22     29.    By virtue of their positions as directors and/or officers of Outerwall, the

23  Individual Defendants, at all relevant times, had the power to control and influence, and did

24  control and influence and cause Outerwall to engage in the practices complained of herein.

25     30.    Each of the Individual Defendants is required to act in good faith, in the best

26  interests of the Company's stockholders, and with such care, including reasonable inquiry, as

27  would be expected of an ordinarily prudent person.  In a situation where the directors of a

28  CLASS ACTION COMPLAINT

1   publicly traded company undertake a transaction that may result in a change in corporate control,

2   the directors must take all steps reasonably required to maximize the value stockholders will

3   receive rather than use a change of control to benefit themselves.  To diligently comply with this

4   duty, the directors of a corporation may not take any action that:

5           (a)     adversely affects the value provided to the Company's stockholders;

6           (b)     contractually prohibits them from complying with or carrying out their

7   fiduciary duties;

8           (c)     discourages or inhibits alternative offers to purchase control of the

9   Company or its assets;

10           (d)     will otherwise adversely affect their duty to search and secure the best

11   value reasonably available under the circumstances for the Company's stockholders; or

12           (e)     will provide the directors and/or officers with preferential treatment at the

13   expense of, or separate from, the public stockholders.

14       31.     Plaintiff alleges herein that the Individual Defendants, separately and together, in

15   connection with the Proposed Acquisition, violated duties owed to Plaintiff and the other

16   stockholders of Outerwall, including their duties of loyalty, good faith, and due care, insofar as

17   they, inter alia, failed to obtain the best price possible under the circumstances before entering

18   into the Proposed Acquisition.

19   **CLASS ACTION ALLEGATIONS**

20       32.     Plaintiff brings this action on behalf of himself and all other public stockholders

21   of Outerwall that have been or will be harmed by defendants' conduct described herein (the

22   "Class").  Excluded from the Class are defendants and any individual or entity affiliated with any

23   defendant.

24       33.     This action is properly maintainable as a class action.

25       34.     The Class is so numerous that joinder of all members is impracticable.  According

26   to the Agreement and Plan of Merger (the "Merger Agreement") the parties entered into on July

27   24, 2016, there are over 17.2 million shares of Outerwall common stock outstanding as of July

28   CLASS ACTION COMPLAINT

1  21, 2016.  The actual number of public stockholders of Outerwall can be ascertained through

2  discovery.

3      35.      There are questions of law and fact which are common to the Class, including,

4  inter alia, the following:

5          (a)      whether the Recommendation Statement contains materially false or

6  misleading information;

7          (b)      whether the Individual Defendants have breached their fiduciary duties of

8  loyalty, good faith, and/or due care with respect to Plaintiff and the other members of the Class

9  in connection with the Proposed Acquisition;

10         (c)      whether the Individual Defendants breached their fiduciary duty to secure

11 and obtain the best price reasonably available under the circumstances for the benefit of Plaintiff

12 and the other members of the Class in connection with the Proposed Acquisition;

13         (d)      whether the Individual Defendants, in bad faith and for improper motives,

14 impeded or erected barriers designed to discourage other potentially interested parties from

15 making an offer to acquire the Company or its assets; and

16         (e)      whether Plaintiff and the other members of the Class would suffer

17 irreparable injury were the Proposed Acquisition consummated.

18     36.      Plaintiff is an adequate representative of the Class, has retained competent

19 counsel experienced in litigation of this nature, and will fairly and adequately protect the

20 interests of the Class.

21     37.      Plaintiff's claims are typical of the claims of the other members of the Class and

22 Plaintiff does not have any interests adverse to the Class.

23     38.      The prosecution of separate actions by individual members of the Class would

24 create the risk of inconsistent or varying adjudications that would establish incompatible

25 standards of conduct for defendants, or adjudications that would, as a practical matter, be

26 dispositive of the interests of individual members of the Class who are not parties to the

27

28 CLASS ACTION COMPLAINT

BRESKIN ı JOHNSON ı TOWNSEND^PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

- 8 -

1  adjudications or would substantially impair or impede those non-party Class members' ability to

2  protect their interests.

3      39.    Defendants have acted on grounds generally applicable to the Class with respect

4  to the matters complained of herein, thereby making appropriate the relief sought herein with

5  respect to the Class as a whole.

6                          **THE FLAWED SALES PROCESS**

7      40.    As revealed by the Recommendation Statement, the Proposed Acquisition is the

8  product of a flawed process, driven by a short-term activist investor.

9      41.    From 2014 to early 2016, numerous companies and other entities approached

10  Outerwall about engaging in a strategic transaction, including selling the entire company.  While

11  the Recommendation Statement fails to disclose any details about the potential business

12  transactions, according to Engaged Capital, suitors offered as high as $90 per share for the

13  Company.

14      42.    On December 7, 2015, the Company issued a press release that contained updated

15  financial guidance for Outerwall.  The Company revised its outlook downward to reflect lower

16  expected revenue from its Redbox segment.  Outerwall's stock fell from $58.06 to $39.24 per

17  share on this news.  On February 2, 2016, the Company issued another press release containing

18  unfavorable financial information about Redbox.  The Company's stock fell from $32.69 to

19  $25.83 per share on this news.

20      43.    Engaged Capital used this drop in Outerwall's stock price to buy a substantial

21  amount of the Company's stock.  On February 5, 2016, Engaged Capital informed Outerwall that

22  it owned 14% of the Company's stock.  Engaged Capital sought a meeting with the Company's

23  management.   When management did not schedule a meeting quick enough for Engaged

24  Capital's liking, Engaged Capital filed an amendment to its Schedule 13D that contained a letter

25  detailing its complaints against the Board.  Foremost among those complaints was that the

26  Company was spending too much money on growth investments (notably ecoATM) and that the

27  Board should declare a bigger dividend.

28  CLASS ACTION COMPLAINT

44.     On March 4, 2016, the Company engaged Morgan Stanley "to provide financial advice and services to the Company relating to activist stockholder matters **and** the potential evaluation and valuation of the Company and potential strategic and financial alternatives."  On March 13, 2016, the Board approved an increase in the Company's quarterly dividend from $0.30 to $0.60 per share, a key demand of Engaged Capital.

45.     Between February and April, Outerwall and Engaged Capital met to discuss Engaged Capital's demands.  The two parties entered into an agreement on April 11, 2016.  Pursuant to the agreement, Engaged Capital would immediately appoint one director to the Board immediately and two more before August 1, 2016.  In addition, the agreement forced the Board to hire legal counsel to advise it in connection with the Board's evaluation of strategic and financial alternatives.  The Board hired Wachtell, Lipton, Rosen & Katz as its legal advisor.

46.     Beginning in late March 2016, Morgan Stanley began contacting a number of bidders for the Company.  Between May 5, 2016, and May 9, 2016, Morgan Stanley received eight indications of interest to acquire the Company.  The indications ranged in price from $27 per share to $57 per share.  The Recommendation Statement gives no explanation on the vast divergence in price.

47.     Apollo submitted an indication of interest in the range of $50-$55 per share.  Also, a potential bidder, which is referred to as "Company A" in the Recommendation Statement, submitted an indication of interest of $48 per share.  Another potential bidder, referred to as "Company B" in the Recommendation Statement, submitted an indication of interest in the range of $55-$57 per share.

48.     The Board allowed the potential acquirers that offered more than $45per share to continue in the bidding process.

49.     On June 26, 2016, Company B lowered its offer to $43-$45 per share.  The Recommendation Statement provides no explanation for Company B's drastically decreased offer.  Rather than negotiate with Company B, and despite its initial much higher offer, the Board had Morgan Stanley inform Company B that it would no longer be participating in the sale

CLASS ACTION COMPLAINT

BRESKIN ǀ JOHNSON ǀ TOWNSEND[PLLC]
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

1    process.

2        50.    On July 21, 2016, the final two bidders made their offers for the Company.

3    Apollo proposed an all cash offer of $50 per share, but would not allow Outerwall to pay its

4    regular quarterly dividend.  Company A offered $48 per share, but would allow the Company to

5    pay a dividend.

6        51.    On July 22, 2016, the Board met with Morgan Stanley, its legal advisor, and the

7    Company's legal advisor to discuss the two bids.  The Recommendation Statement claims that

8    Morgan Stanley reviewed its financial analysis with the Board, including its different valuation

9    methodologies.  As part of its financial analysis, Morgan Stanley relied on three different sets of

10   financial projections provided by management, the "Core Case," the "Unrisked Strategic Case,"

11   and the "Downside Case" (collectively, the "Management Cases"), and the median forecasts

12   from eight different analysts, called the "Street Median Case."

13       52.    The Board went back to both bidders and told them to make their best offers.  On

14   July 24, 2016, Apollo offered $52 per share for the Company and agreed to allow Outerwall to

15   issue its normal dividend.  The Board agreed to Apollo's offer that day.

16       53.    The next day, on July 25, 2016, Outerwall and Apollo issued a press release

17   announcing that the Individual Defendants had agreed to sell Outerwall to Apollo.  Under the

18   terms of the Merger Agreement, holders of Outerwall common stock will receive $52 per share

19   in cash for each share of Outerwall common stock.  The press release announcing the deal stated:

20       BELLEVUE, Wash. and NEW YORK, July 25, 2016 — Outerwall Inc.
         ("Outerwall" or the "Company") (Nasdaq: OUTR) today announced that it has
21       entered into an Agreement and Plan of Merger (the "Merger Agreement") with
         affiliates of certain funds (the "Apollo Funds") managed by affiliates of Apollo
22       Global Management, LLC (together with its consolidated subsidiaries, "Apollo")
         (NYSE: APO), a leading global alternative investment manager, pursuant to
23       which the Apollo Funds will acquire all of the outstanding shares of Outerwall
         common stock for $52.00 per share in cash.
24

25                              *   *   *

26
         "We are extremely excited for our funds to acquire Outerwall," said David
27       Sambur, Partner at Apollo.  "Outerwall is a dynamic customer-focused business

28   CLASS ACTION COMPLAINT                          BRESKIN | JOHNSON | TOWNSEND[PLLC]
                                                      1000 Second Avenue, Suite 3670
                                                      Seattle, Washington 98104 Tel: 206-652-8660
                              - 11 -

that delivers superior kiosk experiences that delight consumers and generate value for its retailer partners. We look forward to working with Outerwall's talented and dedicated team to continue the business's strong heritage of growth and innovation."

## THE PROPOSED CONSIDERATION IS UNFAIR

54.     The Individual Defendants' fiduciary duties require them to maximize stockholder value when entering into a change-in-control transaction such as the Proposed Acquisition. Here, however, the Individual Defendants' eagerness to enter into an acquisition at the whim of the short-term activist investor, Engaged Capital.  As a result, the Company's public stockholders have been, and will continue to be, denied the fair process and arm's-length negotiated terms to which they are entitled to in a sale of the Company.   Indeed, the Proposed Acquisition's consideration does not reflect the true inherent value of the Company as known to the Individual Defendants and Apollo.

55.     The sale of the Company was pushed by Engaged Capital, a short-term activist investor of Outerwall.  Engaged Capital bought over 2.4 million shares of the Company at an average price of $31.09.  Engaged Capital bought Outerwall's stock when it was at a temporary low point.  The Company's key Redbox segment was hit by declining revenue due to, among other things, the Olympics and U.S. Presidential election cycle.  These two events make it less likely for customers to rent movies from Redbox.  In addition, Outerwall's management was relatively new, as Engaged Capital admitted in its letter to the Board.  As a result, the investing public faced uncertainty about the Company's turnaround efforts, which weighed on its stock price.

56.     Engaged Capital admitted in its letter to the Board that its position in Outerwall was its largest holding.  Since the announcement of the Proposed Acquisition, Engaged Capital has sold over one million shares.  Assuming it holds onto its remaining shares of stock until (and if) the Proposed Acquisition closes, Engaged Capital will have made over $51 million.  The Company's normal stockholders, however, will not be so lucky.  Outerwall's stock traded as high as $82.87 over the past year, and, as Engaged Capital pointed out, the Board previously rejected

offers as high as $90 per share.  In fact, the Company's stock price closed at $58.06 just nine months ago, on December 7, 2015.  By selling now, as a significant discount to the Company's previous stock price, the Board is caving to the interests of Engaged Capital, which, as an activist investor, needed to move its money quickly out of the Company and onto new targets.[1]

57.   The inadequacy of the Proposed Acquisition's consideration is supported by common metrics used to value companies.  A common way to value a company is to compare the EV multiple of its peers to a company.  Using common valuation multiples demonstrates that the Proposed Acquisition's consideration is at a significant discount to Outerwall's implied value based on its peers.[2]   The Company's peers trade at a multiples between 0.85 and 2.94 times expected fiscal year 2016 revenues.  Using those same multiples, Outerwall is worth between $1.667 billion and $5.7 billion–$56.09 to $307.32 per share.  Using EBITDA multiples also demonstrates that the Proposed Acquisition undervalues Outerwall.  The Company's peers trade between 8.05 and 12.49 times their EBITDA for the last twelve months ("LTM") and 7.0 and 10.28 times their expected EBITDA for the 2016 fiscal year.  Using these same multiples, Outerwall is worth between $158.74 and $272 per share based on LTM EBITDA and $110.97 to $184.90 per share based on its expected EBITDA for fiscal year 2016, such as the one produced when dividing Outerwall's peers' EV divided by their EBITDA to the previous twelve months, demonstrates that the Company could be worth $272 per share, more than five times the take-out price in the Proposed Acquisition.

58.   In addition, the Company's significant investment in growth businesses is finally paying off.  On July 28, 2016, just three days after the Company announced the Proposed

---

[1] Outerwall is not the first time Engaged Capital pushed a company into a sale.  Previous examples include Boulder Brands, Inc. and Silicon Image, Inc.

[2] Outerwall's peer group is Blackhawk Network Holdings, Inc., The Brink's Company, Diebold, Incorporated, GameStop Corp., International Game Technology, Netflix, Inc., Scientific Games Corporation, and TiVo Inc.  These are the companies the Board identifies as Outerwall's peers in its Proxy Statement.

CLASS ACTION COMPLAINT

1  Acquisition, Outerwall announced stellar financial results.  In particular, the Company's core

2  diluted earnings before share from continuing operations rose 9.5% year-over-year, from $2.20

3  to $2.41 and free cash flow rose 8% from second quarter of 2015 to second quarter of 2016, from

4  $55.6 million to $60.1 million.  Perhaps most importantly, revenue from the ecoATM segment

5  rose nearly 72% to $44.8 million.

6       59.    In addition, at least one analyst, B. Riley & Co., had a target price for Outerwall

7  over the Proposed Acquisition's consideration.  B. Riley & Co.'s target price was $58 per share.

8  **THE MATERIALLY INCOMPLETE AND MISLEADING**

9  **RECOMMENDATION STATEMENT**

10       60.    In order to secure stockholders tender their shares in support of the unfair

11  Proposed   Acquisition,   defendants   filed   the   materially   incomplete   and   misleading

12  Recommendation Statement with the SEC on August 5, 2016.  The Recommendation Statement

13  misrepresents and/or omits material information necessary for Outerwall stockholders to make

14  an informed decision whether to vote in favor of the Proposed Acquisition.  Specifically, as set

15  forth below, the Recommendation Statement fails to provide Company stockholders with

16  material information and/or provides them with materially misleading information concerning

17  the valuation analysis and future projections prepared by the Company and its financial advisor,

18  Morgan Stanley.

19  **The Recommendation Statement Fails to Disclose Material Information Concerning the**

20  **Flawed Process**

21       61.    The *Background of the Offer* section on pages 13-17 of the Recommendation

22  Statement fails to disclose how many nondisclosure agreements Outerwall entered into with

23  potential bidders and whether any contained standstill provisions.  This is material information

24  necessary so that stockholders know whether any potential bidders are currently precluded from

25  making a topping bid for the Company.

26

27

28  CLASS ACTION COMPLAINT

62.     The Recommendation Statement also fails to disclose why Company B lowered its bid range from $55-$57 per share to $43-$45 per share.  It also fails to disclose why the Board stopped negotiating with Company B at this point.

**The Recommendation Statement Fails to Disclose Material Information Concerning Morgan Stanley's Analysis**

63.     Pages 24-25 of the Recommendation Statement to disclose the premiums paid ranges observed by Morgan Stanley for both the "All Cash Public Transactions" as well as the "All Public Transactions" groups.  In addition, the Recommendation Statement does not disclose the date that Morgan Stanley applied the observed premiums paid ranges.

64.     The description of *Discounted Cash Flow Analysis* on page 25 of the Recommendation Statement fails to disclose the individual inputs and assumptions utilized by Morgan Stanley to derive the discount rate range of 8.6%-9.7% and the basis for applying a range of next twelve months EBITDA multiples of 4.0x to 4.5x to calculate the terminal value. The Registration Statement also fails to disclose the implied perpetuity growth rate range resulting from Morgan Stanley's analysis. Further, the Registration Statement fails to disclose the net debt utilized by Morgan Stanley.

65.     This information is vital for stockholders in deciding whether to tender their stock.  This is particularly true in this instance given the Company's large amount of debt (accounting for nearly half of the $1.6 billion value given to the Proposed Acquisition).  Because the Company has so much debt, even small adjustments can result in significant stockholder value swings.

**The Recommendation Statement Fails to Disclose Material Information Concerning Managements' Projections**

66.     The Registration Statement on pages 23-30 fails to disclose the financial projections for the Core Case, the Unrisked Strategic Case, and the Downside Case, concerning: (i) EBIT; (ii) taxes (or tax rate); (iii) net cash provided by operating activities; (iv) tax-effected

1  interest expense; (v) changes in net working capital; (vi) stock-based compensation expenses;

2  and (vii) any adjustments to unlevered free cash flow.

3       67.    For the Core Case and the Downside Case, the Recommendation Statement fails

4  to disclose the Company's unlevered free cash flow.

5       68.    For the Core Case, Morgan Stanley used free cash flow in its analysis, which it

6  defined as "net cash provided by operating activities less capital expenditures."  For the Unrisked

7  Strategic Case, Morgan Stanley used unlevered free cash flows, which the Recommendation

8  Statement defined as "net cash provided by operating activities less capital expenditures, plus

9  tax-effected interest expense." The Recommendation Statement says that the Downside Case

10 used the same assumptions and estimates as the Core Case, therefore implying that the analysis

11 used free cash flow, not unlevered free cash flow.  The Registration Statement also fails to

12 explain why different sets of cash flow are used for the different forecasts.

13      69.    Also concerning the Core Case, there are no details on the "upside and downside

14 sensitivity scenarios" management utilized according to page 27 of the Registration Statement.

15      70.    The failure to include this material information in the Recommendation Statement

16 renders it false and/or misleading as this information is integral to stockholders' evaluation of the

17 consideration being offered in the Proposed Acquisition.  Indeed, these financial projections

18 provide a peek into Outerwall's expected future performance (i.e., growth/profitability) and,

19 consequently, its value as a standalone entity.   More importantly, however, this expected

20 performance is more reliable than similar forecasts prepared by third-party analysts and other

21 non-insiders as it comes from members of corporate management who have their fingers on the

22 pulse of the Company.  Accordingly, it is no surprise that financial projections are among the

23 most highly sought after disclosures by stockholders in the context of corporate transactions such

24 as this to have a fair summary of the financial analyses performed by Morgan Stanley.

25

26

27

28 CLASS ACTION COMPLAINT

**COUNT I**

**Against All Defendants for Violation of Section 14(e) of the Exchange Act**

71.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

72.     During the relevant period, defendants disseminated the false and misleading Recommendation Statement, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of section 14(e) of the Exchange Act.

73.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Recommendation Statement. The Recommendation Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the unfair sales process for the Company, the unfair consideration offered in the Proposed Acquisition, and the actual intrinsic value of the Company's and Apollo's assets.  The defendants were at least negligent in filing the Recommendation Statement with these materially false and misleading statements.

74.     The omissions and false and misleading statements in the Recommendation Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Acquisition.  In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Recommendation Statement and in other information reasonably available to stockholders.

75.     By reason of the foregoing, the defendants have violated section 14(e) of the Exchange Act.

76.     Because of the false and misleading statements in the Recommendation Statement, Plaintiff and the Class are threatened with irreparable harm, rendering monetary damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct

CLASS ACTION COMPLAINT

BRESKIN ǀ JOHNSON ǀ TOWNSEND[PLLC]
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

1  is corrected.

2  ## COUNT II

3  **Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act**

4  77.    Plaintiff incorporates by reference and realleges each and every allegation

5  contained above, as though fully set forth herein.

6  78.    The Individual Defendants acted as controlling persons of Outerwall within the

7  meaning of section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as

8  officers and/or directors of Outerwall and participation in and/or awareness of the Company's

9  operations and/or intimate knowledge of the false statements contained in the Recommendation

10  Statement filed with the SEC, they had the power to influence and control and did influence and

11  control, directly or indirectly, the decision-making of the Company, including the content and

12  dissemination of the various statements which Plaintiff contends are false and misleading.

13  79.    Each of the Individual Defendants was provided with or had unlimited access to

14  copies of the Recommendation Statement and other statements alleged by Plaintiff to be

15  misleading prior to and/or shortly after these statements were issued and had the ability to

16  prevent the issuance of the statements or cause the statements to be corrected.

17  80.    In particular, each of the Individual Defendants had direct and supervisory

18  involvement in the day-to-day operations of the Company, and, therefore, is presumed to have

19  had the power to control or influence the particular transactions giving rise to the securities

20  violations as alleged herein, and exercised the same.  The Recommendation Statement at issue

21  contains the unanimous recommendation of each of the Individual Defendants to approve the

22  Proposed Acquisition.  They were, thus, directly involved in the making of this document.

23  81.    In addition, as the Recommendation Statement sets forth at length, and as

24  described herein, the Individual Defendants were each involved in negotiating, reviewing, and

25  approving the Proposed Acquisition.  The Recommendation Statement purports to describe the

26  various issues and information that they reviewed and considered—descriptions which had input

27  from the directors.

28  CLASS ACTION COMPLAINT

82.     By virtue of the foregoing, the Individual Defendants have violated section 20(a) of the Exchange Act.

83.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated section 14(e) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Outerwall's stockholders will be irreparably harmed.

## COUNT III

### Against the Individual Defendants for Breach of Fiduciary Duties

84.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

85.     The Individual Defendants have violated the fiduciary duties of care, loyalty, and good faith owed to the public stockholders of Outerwall and have acted to put their personal interests ahead of the interests of Outerwall's stockholders.

86.     By the acts, transactions, and course of conduct alleged herein, the Individual Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff and the other members of the Class of the true value of Outerwall.

87.     The Individual Defendants have violated their fiduciary duties by entering Outerwall into the Proposed Acquisition without regard to the effect of the Proposed Acquisition on Outerwall's stockholders.

88.     As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required and breached their duty of loyalty owed to the stockholders of Outerwall because, among other reasons:

(a)     they failed to take steps to maximize the value of Outerwall to its public stockholders;

CLASS ACTION COMPLAINT

1      (b)    they failed to properly value Outerwall and its various assets and

2  operations; and

3      (c)    they ignored or did not protect against the numerous conflicts of interests

4  resulting from the Individual Defendants' own financial stakes in the Proposed Acquisition.

5      89.    Because the Individual Defendants control the business and corporate affairs of

6  Outerwall, and have access to private corporate information concerning Outerwall's assets,

7  business, and future prospects, there exists an imbalance and disparity of knowledge and

8  economic power between them and the public stockholders of Outerwall that makes it inherently

9  unfair for them to pursue and recommend the Proposed Acquisition wherein they will reap

10  disproportionate benefits to the exclusion of maximizing stockholder value.

11      90.    By reason of the foregoing acts, practices, and course of conduct, the Individual

12  Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary

13  duties toward Plaintiff and the other members of the Class.

14      91.    The Individual Defendants are engaging in self-dealing, are not acting in good

15  faith toward Plaintiff and the other members of the Class, and have breached and are breaching

16  their fiduciary duties to the Class.

17      92.    As a result of the Individual Defendants' unlawful actions, Plaintiff and the other

18  members of the Class will be irreparably harmed in that they will not receive their fair portion of

19  the value of Outerwall's assets and operations.  Unless the Proposed Acquisition is enjoined by

20  the Court, the Individual Defendants will continue to breach their fiduciary duties owed to

21  Plaintiff and the members of the Class, and may consummate the Proposed Acquisition, all to the

22  irreparable harm of the members of the Class.

23      93.    Plaintiff and the Class have no adequate remedy at law.  Only through the

24  exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the

25  immediate and irreparable injury that defendants' actions threaten to inflict.

26

27

28  CLASS ACTION COMPLAINT

BRESKIN | JOHNSON | TOWNSEND<sup>PLLC</sup>
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

1

## **PRAYER FOR RELIEF**

2      WHEREFORE, Plaintiff demands injunctive relief, in his favor and in favor of the Class

3 and against defendants as follows:

4      A.      Declaring that this action is properly maintainable as a class action;

5      B.      Rescinding, to the extent already implemented, the Merger Agreement;

6      C.      Enjoining defendants, their agents, counsel, employees, and all persons acting in

7 concert with them from consummating the Proposed Acquisition, unless and until the Company

8 adopts and implements a procedure or process reasonably designed to enter into a merger

9 agreement providing the best possible value for stockholders;

10      D.      Awarding Plaintiff the costs and disbursements of this action, including

11 reasonable attorneys' and experts' fees; and

12      E.      Granting such other and further equitable relief as this Court may deem just and

13 proper.

14 Dated: August 19, 2016                         BRESKIN JOHNSON & TOWNSEND PLLC

15
                                                 s/ Roger M. Townsend
16                                               Roger M. Townsend, WSBA No. 25525
                                                 1000 Second Avenue, Suite 3670
17                                               Seattle, WA 98104
                                                 Telephone: (206) 652-8660
18                                               Facsimile: (206) 652-8290
                                                 E-mail: rtownsend@bjtlegal.com
19
                                                 ROBBINS ARROYO LLP
20
                                                  s/ Stephen J. Oddo
21                                               Stephen J. Oddo
                                                 600 B Street, Suite 1900
22                                               San Diego, CA 92101
                                                 Telephone: (619) 525-3990
23                                               Facsimile: (619) 525-3991
                                                 E-mail: soddo@robbinsarroyo.com
24
                                                 Attorneys for Plaintiff
25

26

27

28 CLASS ACTION COMPLAINT                                    BRESKIN ı JOHNSON ı TOWNSEND[PLLC]
                                                                  1000 Second Avenue, Suite 3670
                                                             Seattle, Washington 98104 Tel: 206-652-8660